IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MILTON MUNSON,            )<br>                                                  )<br>            Plaintiff,         )<br>                                                  )<br>      v.                                        )<br>                                                  )<br>SOCIAL SECURITY ADMINISTRATION, )<br>                                                  )<br>            Defendant.       ) | 8:05CV329<br><br>MEMORANDUM AND ORDER |

This matter is before the court on plaintiff's brief for summary judgment.[1] Filing No. 14. This is an action for judicial review of a final decision of the Secretary of Health and Human Services. Filing No. 1. The defendant has filed a brief in support of the decision of the administrative law judge (ALJ). Filing No. 18. Jurisdiction of this court is pursuant to 42 U.S.C. § 405 (g). A certified copy of the transcript of the record has been filed. Filing No. 11. Plaintiff alleges he filed for disability payments in November, 2001, and again in February, 2003. The ALJ considered only the February 2003 application. The ALJ apparently did not have or could not find this application, and therefore the ALJ chose to proceed only on the second application.[2] The plaintiff's claims were denied by the ALJ, and again on appeal by the Appeals Council. Plaintiff claims that the decision of the defendant is not supported by substantial evidence. Finally, plaintiff alleges that the ALJ is biased and should be relieved from his duties in this case. The court has carefully

---

[1] The court notes no motion for summary judgment has been filed and this is actually a brief in support of judicial review.

[2] The court notes, however, that no evidence has been submitted to the court to support the plaintiff's claim that he filed such an application. Accordingly, the court will not consider the earlier application.

1

reviewed the record, and in particular the transcript in this case, the briefs, and the relevant law and concludes that judgment shall be entered in favor of the plaintiff.

**Background**

Plaintiff claims he filed for disability benefits in 2001 and again in early 2003, alleging disability as of June 1, 2000. He has a high school education, and he completed college and pharmacy school. In the past he held jobs as a telemarketer and as a pharmacist. He is 55 years of age. Plaintiff has been diagnosed with bipolar disorder and he has serious gambling and drinking problems. He received inpatient treatment on a number of occasions, including November and December 2001 and again in January 2002. In all, he has been hospitalized for treatment in 1996, 1997, 1999, 2001, 2002, and 2003. He has been on multiple medications for his manic and depressive disorders. Upon finding that his pharmacy license had been revoked, he became suicidal. He had received ten DUI's with four of them resulting in convictions. It appears that the onset of his disorders began in the 1980's, with his depressive disorder dating back to at least when he was a member of the air force (Tr. 473), and he received a specific diagnosis of bipolar disorder in the 1990's. During his manic periods, he spends money unwisely. For example, in November, 2001, plaintiff went on a $25,000 spending spree, and in July 2001, he purchased four automobiles. He and his doctors report erratic and unpredictable behavior and note unnecessary risk taking. He has been arrested during his manic period for various inappropriate behaviors.

Dr. Ernest Haffke, M.D., examined plaintiff on February 8, 2002, and determined that plaintiff was disabled and permanently and totally unemployable. (Tr. 528) Dr. Haffke

assessed plaintiff and concluded that he had a global assessment functioning (GAF)[3] of 65 at that time, but he noted over the last few years plaintiff's GAF was really closer to 40. *Id.* A GAF range of 61-70 is considered mild. Dr. Haffke noted that the plaintiff had more frequent periods of times when he was not functional and required more frequent hospitalization. *Id.* Dr. Barbara Roth, M.D., saw plaintiff in April, 2003, and noted he was stable. (Tr. 475-76)  In May 2003 Dr. Roth rated him with a fair to poor ability to do most work functions. (Tr. 365-67)  In June, 2004, Dr. Roth opined that plaintiff's bipolar disorder caused him to be disabled separate and apart from his alcoholism. (Tr. 666) Both Dr. Roth and Dr. Haffke list bipolar mood disorder as the primary diagnosis followed by alcohol dependence. Dr. Roth concluded that employment would exacerbate plaintiff's symptoms. (Tr. 666)

At the hearing before the ALJ, plaintiff also testified that he lived alone, cooked his own meals, did his own household chores, did his own shopping, spent about twenty hours a week on his computer, watched television about twenty hours a week, did his own bills and wrote his own checks. (Tr. 37-40)  The vocational expert testified that plaintiff could return to his past work as a telemarketer or a pharmacist.

---

[3] The Global Assessment of Functioning is a clinical tool used by mental health professionals to determine the level of functioning for an individual.  Relevant to this case, a 71-80 denotes slight impairment; a 61-70 indicates some difficulty but generally functions well; a 51-60 score indicates that there are moderate functional limitations in social, occupational or school areas; a 41-50 score shows serious symptoms; a 31-40 score shows serious impairment in several areas;  a 21-30 is indicative of serious impairment with regard to ability to communicate, serious impairment of judgment, or inability to function in almost all areas; and a score of 11-20 means there is some danger of harm to self or others.  Wikipedia, "Global Assessment of Functioning", Wikipedia.org.; American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 30-32 (4th ed. 1994).

**Legal Standards**

A disability is defined as the "inability to engage in any substantially gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (D)(1)(A); 20 C.F.R. § 404.1505. A claimant is considered to be disabled when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantially gainful work which exists in significant numbers in the national economy...." 42 U.S.C. § 423 (D)(2)(A).

The ALJ evaluates a disability claim according to a five step sequential analysis prescribed by Social Security regulations. The ALJ examines

> any current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience. *See* 20 C.F.R. § 404.1520(a); *Braswell v. Heckler*, 733 F.2d 531, 533 (8th Cir. 1984). If a claimant suffers from an impairment that is included in the listing of presumptively disabling impairments (the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience. *See Braswell*, 733 F.2d at 533. If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and second, that other such work exists in substantial numbers in the national economy. *See Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). A claimant's residual functional capacity is a medical question. *See id.* at 858.

*Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000).

When reviewing the decision not to award disability benefits, the district court does not act as a fact finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). Rather, the district court

will affirm the Commissioner's decision to deny benefits if it is supported by substantial evidence in the record as a whole. *Eback v. Chater*, 94 F.3d 410, 411 (8th Cir. 1996). "Substantial evidence is that which a reasonable mind would find as adequate to support the ALJ's decision." *Brown v. Chater*, 87 F.3d 963, 964 (8th Cir. 1996) (*citing Baumgarten v. Chater*, 75 F.3d 366, 368 (8th Cir. 1996)). In determining whether the evidence in the record is substantial, the court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999) (*citing Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). If the record contains substantial evidence supporting the Commissioner's decision, the court may not reverse the decision either "because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citations omitted). The court may, however, "reverse the administrative determination on the ground of unreasonableness." *Bradley v. Bowen*, 660 F. Supp. 276, 279 (W.D. Ark. 1987) (*citing Gavin v. Heckler*, 811 F.2d 1195, 1199-1201 (8th Cir. 1987), *and Deuter v. Schweiker*, 568 F. Supp. 1414 (N.D. Ill. 1983)).

**Treating Physician**

"The opinion of a treating specialist controls if it is well-supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence." *Kelley v. Callahan*, 133 F. 3d 583, 589 (8th Cir. 1998) (*citing* Smallwood v. Chater, 65 F.3d 87, 89 (8th Cir. 1995)). In reviewing applications for Social Security benefits, an "ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained in the record." *Prosch v. Apfel*, 201 F.3d 1010,

1013-14 (8th Cir. 2000). "A treating physician's opinion is generally entitled to substantial weight; however, such an opinion is not conclusive in determining disability status, and the opinion must be supported by medically acceptable clinical and diagnostic data." *Davis v. Shalala,* 31 F.3d 753, 756 (8th Cir. 1994) (*citing Mathews v. Bowen*, 879 F.2d 422,424 (8th Cir. 1989)) . In reviewing an application for Social Security disability benefits, "the ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Prosch*, 201 F.3d at 1014. However, it is also important to note that "the opinion of a consultative physician who examines the claimant once or not at all does not generally constitute the substantial evidence." *Jenkin v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999), quoting *Kelley*, 133 F.3d at 589. This is especially true when the consultative physician is the only examining doctor to contradict the treating physician. *Id.* at 922. Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must "always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

"Treating source medical opinions are still entitled to deference and must be weighed using all of the factors in C.F.R. § 404.1527and 416.927". *Prosch v. Apfel*, 201 F.3d 1010, 1016 (8th Cir. 2000). The five factors that must be considered when determining if a treating physician's opinion should be granted controlling weight are: 1) the length of the treatment relationship and the frequency of examination; 2) nature and extent of treatment relationship; 3) quality of evidence in support of opinion; 4) consistency of the opinion with the record as a whole; and 5) whether treating physician is also a specialist. 20 C.F.R. § 404.1527(d)(2). "Treating physicians' opinions are not medical opinions that

6

should be credited when they simply state that a social security disability claimant cannot be gainfully employed, because they are merely opinions on the application of the statute, a task assigned solely to the discretion of the commissioner [of Social Security]." *Stormo v. Barnhart,* 377 F.3d 801, 806 (8th Cir. 2004) (*citing Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir.2002)).  Also, it is important to note that when an impairment can be controlled by treatment or medication, it cannot be considered disabling.  *Wardford v. Bowen*, 875 F.2d 671, 673 (8th Cir. 1989) (citations omitted.  "Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits." *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) *(citing Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989)).

**Analysis**

The ALJ concluded that the claimant is not disabled within the meaning of the Social Security Act.  The ALJ considered that plaintiff suffered from bipolar disorder, reflux disease, acne vulgaris, hypercholesterolemia, and alcoholism.  (Tr. 26) The ALJ found plaintiff disabled when all of these symptoms were taken together.  However, when the ALJ took alcohol abuse out of the equation, he determined that plaintiff was not totally disabled.  *Id*.  The ALJ further determined that absent the alcohol abuse plaintiff could do medium-level work and could do his past relevant work as a pharmacist and telemarketer.  *Id*. at 27.  Plaintiff, according to the ALJ, could also be a kitchen helper, cleaner, or hand packer, where there are numerous jobs in the national economy.  *Id*. at 25.

The ALJ concluded that alcohol is a material factor in plaintiff's disability.  "An individual is not considered to be disabled...if alcoholism or drug addiction would...be a contributing factor material to the Commissioner's determination that the individual is

disabled." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) *quoting* 42 U.S.C. § 423 (d)(2)(c). The burden is on the claimant to prove that substance abuse is not a significant factor in his disability. *Id* at 725 (*citing Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000)). Here, the ALJ used the two-step analysis to determine whether plaintiff is disabled when alcohol is not considered. *Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003) (citing 20 C.F.R. § 404.1535(b)). The ALJ found plaintiff disabled when using alcohol. However, when alcohol is not considered, the ALJ found plaintiff to be stable with symptoms that could be controlled by medication. According to the ALJ, plaintiff's GAF scores generally ranged from 60-65 during the times he stopped drinking. The treating doctors disagree with this finding. The ALJ discounted Dr. Roth's medical opinion, finding it was inconsistent with the evidence in the medical record. Further, the ALJ discredited Dr. Roth's letter (Tr. 666) regarding the role of alcohol as it relates to plaintiff's mental health. The court also notes that the ALJ gave very little weight to at least one of the non-treating doctors, because they understated the problem. (Tr. 22; 350-63)

After finding the plaintiff not disabled, the ALJ then determined he could return to his past relevant work or in the alternative medium and light work that existed in the national economy. The court is very concerned about the ALJ's determination that plaintiff could return to his previous job as a pharmacist. Given the limitations on his attention span, his inability to do long routine and repetitive tasks, and the fact that his license to practice has been revoked, the court is doubtful that by any stretch of the imagination could plaintiff return to his past work as a pharmacist. However, the ALJ went a step further and found that in the alternative plaintiff could do other jobs in the national economy. This finding is supported by the evidence in the record.

Plaintiff notes that he has been treated for bipolar disorder as early as 1999 when he was handcuffed by police and taken to the Veteran's Administration Hospital, and previous to that he had been treated for numerous manic and depressive episodes since the 1980's. He has had multiple hospitalizations where his GAF score fell well below 50. In fact, the medical records show that the GAF range has been as low as 20. (Tr. 20) In 2002 Dr. Haffke conducted a psychiatric evaluation and determined that his GAF was around 40. (Tr. 528) In early 2002 Dr. William Marcil assessed his GAF at 35.

The ALJ determined that the alcohol exacerbated the bipolar disorder. The ALJ concluded that alcohol is plaintiff's real problem. However, the court finds no substantial evidence for this conclusion. Dr. Roth, one of the treating physicians, clearly opined that the bipolar disorder and not alcoholism caused plaintiff's disability as did Dr. Haffke. Dr. Haffke stated:

> Global assessment of functioning for the bipolar disorder at present time is 65 indicating mild symptomatology. Global assessment of functioning averaging over the last few years is closer to 40. He has frequent periods of time when he is not functional and requires hospitalization. There are periods of time when he can function marginally. Those periods of time have become closer and closer together.
>
> Summary: Milton Munson is a 53 year old veteran with a long history of bipolar affective disorder both manic and depressive. He has a long history of alcohol dependence. He has had multiple hospitalizations for both conditions. His ability to remain functional and employable has been decreasing over the years. His psychiatric symptomatology has been increasing in severity and his periods of normal functioning have been decreasing in length. Given the history and the severity of his symptoms in my opinion he is permanently and totally unemployable.

Tr. 528. The ALJ failed to give appropriate weight to the opinions of the treating physicians. Plaintiff's series of hospitalizations, outpatient treatments, mood and personality variations, which have increased over time, his irrational spending and erratic

9

behaviors all support a finding of disability and unemployability as stated by the treating physicians. There is substantial evidence in the record to conclude that plaintiff is disabled and not employable, and there is not substantial evidence to support the findings of the ALJ.[4]

THEREFORE, IT IS ORDERED that:

1. This case is reversed and remanded to the Social Security Administration for an award of benefits from the onset date set forth in plaintiff's November, 2003, application; and

2. A separate judgment shall be entered in accordance with this memorandum and order.

DATED this 14th day of July, 2006.

BY THE COURT:

s/Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge

---

[4]Plaintiff also alleges that the ALJ is biased. This assertion is based on an alleged conversation the ALJ had with plaintiff's attorney in an unrelated case about mental illness. The court notes there is a "presumption of honesty and integrity in adjudicators." *Isom v. Schweiker*, 711 F.2d 88, 90 (8th Cir. 1983) (*citing Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). The court is very concerned about the statements by counsel regarding comments made by the ALJ. In particular, the court is concerned about the ALJ's alleged negative statements regarding mental health applicants, mental health professionals, and his unhappiness about working in Omaha. The court is also concerned about the number of disability cases allegedly denied by this ALJ (100%) on cases presented by counsel in this case. (Tr. 2) However, because the court finds there is not substantial evidence to support the determination of the ALJ, it need not address the bias claim in this case.